1  JOHN L. BURRIS, Esq./ State Bar #69888
   BENJAMIN NISENBAUM, Esq./State Bar #222173
2  LAW OFFICES OF JOHN L. BURRIS
   Airport Corporate Centre
3  7677 Oakport Street, Suite 1120
   Oakland, California 94621
4  Telephone: (510) 839-5200    Facsimile: (510) 839-3882
   Email: john.burris@johnburrislaw.com
5         bnisenbaum@gmail.com

6
   Attorneys for Plaintiff
7

8                  UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 GREGORY OLIVER, II,                  Case No. C 07 02460 JL

12         Plaintiff,                    PLAINTIFF'S NOTICE OF MOTION AND
                                         MOTION TO COMPEL PRODUCTION OF
13    vs.                                DOCUMENTS BY DEFENDANT CITY

14 CITY AND COUNTY OF SAN FRANCISCO,
   a municipal corporation; HEATHER FONG, in   Time: 9:30 a.m.
15 her capacity as Chief of Police for the CITY  Date: March 26, 2008
   AND COUNTY OF SAN FRANCISCO; JESSE   Courtroom: F
16 SERNA, individually, and in his capacity as a
   police officer for the CITY AND COUNTY OF   Honorable Magistrate Judge James Larson
17 SAN FRANCISCO; and, San Francisco police
18 officers DOES 1-25, inclusive,

19         Defendants.
20                                           /
21

---

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANT CITY                    1
Case No. C 07 02460 JL

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 26, 2008, at 9:30 a.m., Plaintiff GREGORY OLIVER, II, by and through his attorneys, will move this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, to Compel Defendant CITY to Produce Documents and Things responsive to Plaintiff's Request for Production of Documents to Defendant CITY (set one), Nos.

"11.   Any and all documents that comprise or are part of the SAN FRANCISCO POLICE DEPARTMENT personnel file, including the disciplinary record, and any other documents concerning the hiring, training, duties, performance, assignments, and mental and physical condition of Defendant Officer SERNA;

12.   Any and all documents concerning, or in any way relevant to, any formal complaint made against or about Defendant Officer SERNA within 5 years preceding the subject-incident of August 20, 2006. This includes, but is not limited to:

    a.   Documents concerning all complaints and/or disciplinary or police review of Defendant Officer SERNA by the Internal Affairs Bureau/Division, and/or its CITY AND COUNTY OF SAN FRANCISCO counterpart, and/or the Office of Citizen Complaints;

    b   The complete file, including all documents and materials, concerning each responsive incident and/or investigation."

This motion is based on the Memorandum of Points and Authorities that follows, the declaration of Benjamin Nisenbaum filed in support of the Motion, all documents and records filed in the case, and on such further written and/or oral argument and evidence as may be submitted.

## I.   SUMMARY OF THE FACTS

1.  Plaintiff GREGORY OLIVER, II, a 35 year-old African American male with no criminal history at the time of the subject-incident on August 20, 2006, suffered injuries and false arrest and imprisonment after Defendant Officer JESSE SERNA used excessive force against him near the Impala Club in the Northbeach district of San Francisco. All parties agree that Plaintiff was not more than slightly intoxicated at the time of the incident, about 1:45 a.m.

2.  Plaintiff, a personal trainer for Barry Bonds among other professional athletes, were at the Impala Club, a night club, with several female acquaintances on the night of August 19, 2006. Plaintiff hailed a taxi, which only had room for Plaintiff's acquaintances. Plaintiff's acquaintances left in the taxi, while Plaintiff waited behind, near the intersection of Broadway and Kearney Street, for another taxi to arrive. No taxis came, and Plaintiff walked down Broadway to a location where he expected he would have more success in hailing a taxi. As Plaintiff walked down Broadway, he noticed an altercation involving three Latino males attacking a fourth Latino male. Plaintiff passed by the altercation, and one of the Latino men ran past Plaintiff. Plaintiff observed a San Francisco Police Officer tackle the Latino man who ran past him, and then saw the apparent victim of three Latino males on the ground near him while a San Francisco Police Department officer used force against him. To that end, San Francisco Police Department Officer Yep #95 wrote in his police report that he "shoved the male with my right foot to keep him on the ground. My right foot contacted his side/hip." (referring to the Hispanic male). Plaintiff did not approach or interfere with the officers.

3.  Defendant Officer SERNA then appeared at the scene and pushed Plaintiff in the chest with his police baton, and ordered Plaintiff to stand back. Plaintiff stood back as ordered, with his hands held up to show that he was no threat, and told Defendant Officer SERNA that he seen the altercation involving the Latin men. Plaintiff pointed out that the man on the ground, who a San Francisco Police Department officer was using force against, was actually the victim of an attack by three Latino males.

4.  Although Plaintiff posed no threat, and interfered with no police officer, Defendant Officer SERNA then struck Plaintiff across the upper thigh with his police baton and again ordered

Plaintiff to stand back. Plaintiff retreated again and told Defendant Officer SERNA that he had not done anything. Defendant Officer SERNA then struck Plaintiff again with his police baton.

5. Plaintiff asked Defendant Officer SERNA for his badge number. Instead of supplying his badge number, Defendant Officer SERNA grabbed Plaintiff by the shirt and neck, breaking Plaintiff's necklace. Defendant Officer SERNA told Plaintiff that he was under arrest.

6. Plaintiff yelled out that he was not resisting, and knelt down. Several other unknown Defendant Officer DOES, possibly including Officer Yep #95, who admitted in his report that he assisted SERNA in arresting Plaintiff, began punching and kneeing Plaintiff.

7. While Plaintiff was on the ground, officers removed his watch and a ring from one his fingers. Subsequently, only Plaintiff's watch was returned to him. Plaintiff was handcuffed, and Defendant Officer SERNA unnecessarily wrenched Plaintiff's left wrist with such force that Plaintiff screamed. Plaintiff had previously suffered a compound fracture to the left wrist. In response to Plaintiff's scream, Defendant Officer SERNA told Plaintiff to "shut the fuck up."

8. Defendant Officer SERNA walked Plaintiff to an unknown Defendant Officer DOE, possibly Officer Yep, and let go of Plaintiff's wrist. Plaintiff then was able to tell Defendant Officer SERNA of the injury to his left arm. Plaintiff also told Defendant Officer SERNA that he was causing Plaintiff unnecessary pain. The Defendant Officer DOE asked Plaintiff what he had been doing. When Plaintiff told him that he was trying to catch a cab, the officer told him "look around… you don't belong here." The officer asked where Plaintiff was coming from and how old he was. Defendant Officer SERNA then once again painfully wrenched Plaintiff's left wrist and put Plaintiff in a police vehicle.

9. Plaintiff was transported to jail after being falsely arrested on fabricated charges that he resisted, obstructed, or delayed a peace officer in the performance of their duties. No charges were filed against Plaintiff.

10. Defendant Officer SERNA contended in his report of the incident that Plaintiff "aggressively approached myself and other officers" as officers were taking struggling suspects into custody and SERNA "began to order the crowd back onto the sidewalk." SERNA contends in his report that he pushed Plaintiff and told him to get back on the sidewalk. SERNA contends in his

1  report that Plaintiff then approached him again "in the same manor (sic)", so he struck Plaintiff once
2  in the upper left thigh before he and Officer Yep took Plaintiff to the ground with a leg sweep.
3        11.    In at least two pending civil actions, also filed in Northern District Federal Court,
4  Defendant Officer SERNA is a named Defendant. In *Maestrini v. City and County of San Francisco,*
5  *et al.* case no. C 07 2941 PJH, Marco Maestrini, the Plaintiff in that action, was the victim of alleged
6  excessive force and false arrest by Defendant Officer SERNA. In his police report pertaining to the
7  arrest Mr. Maestrini, Defendant Officer SERNA stated: "I asked Maestrini and Brock to back away
8  and get back on the sidewalk however they refused…." However, Plaintiff Maestrini contended in
9  his First Amended Complaint in case no. C 07 2941 PJH, that on October 29, 2006, on Broadway in
10 Northbeach at about 1:30 a.m., he and a friend observed San Francisco Police Department officers
11 beating a person with excessive force. When Mr. Maestrini and his friend approached the officers to
12 ask what was going on, Defendant Officer SERNA grabbed Mr. Maestrini and slammed him against
13 a parked paddy-wagon several times, repeatedly yelling at Mr. Maestrini to "shut up!" When Mr.
14 Maestrini verbalized a request for Defendant Officer SERNA's badge number, SERNA slammed Mr.
15 Maestrini's head against the paddy-wagon. Mr. Maestrini suffered a laceration to the crown of his
16 head when SERNA slammed it against the paddy-wagon. SERNA contended in his report that Mr.
17 fell onto the pavement after SERNA purportedly grabbed him by the front of his shirt. It is unclear in
18 SERNA's report how such a fall would cause a laceration to the crown of Mr. Maestrini's head. Mr.
19 Just like Plaintiff OLIVER, Mr. Maestrini denied any wrongdoing in his civil Complaint and alleged
20 that Defendant SERNA fabricated a basis to justify his use of excessive force and false arrest.
21       12.    In *Hwang v. City and County of San Francisco, et al.* case no. C 07 2718 MMC,
22 Esther Hwang was falsely arrested by Defendant Officer SERNA and San Francisco Police
23 Department Officer Nelson Artiga on May 12, 2007 after they used excessive force against her.
24 Officer Artiga prepared the primary police report in that case, which claimed that Defendant Officer
25 SERNA took Ms. Hwang to the ground through use of a hair pull takedown after she was detained
26 while allegedly attempting to jaywalk across Broadway at about 11:15 p.m., and allegedly stomping
27 twice on Officer Artiga's right foot. Although Officer Artiga stated that he felt pain in his right toe,
28 and Ms. Hwang's shoes were seized as evidence, there is no indication of any visual documentation

of injury to Officer Artiga. Just like Plaintiff OLIVER and Mr. Maestrini, Ms. Hwang denied any wrongdoing in her civil complaint, and contended that Defendnat SERNA fabricated the basis for his use of force and arrest of Ms. Hwang.  Notably, each of these incidents expressly involve at least one identical specific factual allegation upon which the use of force by Defendant SERNA was predicated:  That Plaintiff OLIVER and Mr. Maestrini allegedly were in the street and disobeyed orders to get back on the sidewalk, and that Ms. Hwang allegedly threatened to jaywalk (i.e., to go off the sidewalk).

13.     Plaintiff OLIVER contends that defendant SERNA, among other officers, used excessive force against him in violation of his federal civil rights, and also contends a broader pattern of allowing such violations by its officers to be ratified and/or condoned by defendant CITY AND COUNTY OF SAN FRANCISCO, which caused Plaintiff OLIVER to suffer the violations alleged.  The discovery sought by plaintiff and denied by defendants is directly germane to plaintiff's contentions that defendant officers violated his civil rights, and that the CITY OF VALLEJO effectively ratified that violation through a policy of allowing such violations by its officers to go unchecked.  Plaintiff will agree to a stipulated protective order regarding the requested discovery in the defendant officers' personnel records.

## II.    ARGUMENT

a)     Discovery in This Case is Governed By Federal Law, Not California Law.

Defendants cite a variety of objections and privileges as grounds for withholding disclosure of the requested documents. The one overriding error that defendants make in objecting to plaintiff's discovery is their  reliance on state law as the basis for the privileges they assert.  In federal question cases such as this one, privileges are determined under federal common law, not state law.  Soto v. City of Concord, 162 F.R.D. 603, 609 n.2 (N.D. Cal. 1995), and all cases cited therein.  Although a court may borrow state law privileges in applying federal common law, it may do so only when the applicable state law is not inconsistent with federal principles.  Id.

It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statues whose central purpose is to protect citizens from abuses of power by state or local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that make it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims. *Miller v. Pancucci*, 141 F.R.D. 292, 297-98 (C.D. Cal. 1992).

b) <u>The Documents Sought By Plaintiff Are Relevant.</u>

For discovery purposes, relevance is construed very broadly, encompassing any matter that bears on, or that reasonably could lead to other matters that could bear on any issue that is or may be in the case. Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues.

To limit [discovery] to matters relevant to only the precise issue presented by the pleadings would not only be contrary to the express purpose of Rule 26, but also might result in a complete failure to afford plaintiff an adequate opportunity to obtain information that would be useful at trial. *Miller*, 141 F.R.D. at 296 (internal quotation marks and citations omitted).

Here, plaintiff seeks information pertaining to evidence of defendant officers' prior misconduct, and defendants knowledge of and responses thereto, prior to and around the time of plaintiff's arrest. Clearly, such material is relevant to plaintiff's claims. Plaintiff alleges that defendant officer SERNA used excessive force against him, made false statements in his police report, and that these defendant officers have a history of doing so.

The material sought may lead to evidence of prior misconduct on the part of the individual officers involved in plaintiff's arrest. Under Rule 404(b) of the Federal Rules of Evidence, evidence of prior bad acts is admissible to prove motive, opportunity, preparation, plan, knowledge, identity or

absence of mistake or accident.@ *Miller*, 141 F.R.D. at 296 n.3. Moreover, some or all of the requested documents may comprise or will certainly lead to admissible evidence pertaining to plaintiff's allegation that there was a custom or policy of condoning the use of excessive force and fabrication within the police force ranks at relevant times. Id. See also, *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995)(internal quotation marks and citations omitted)(a plaintiff may prove the existence of a municipal custom or informal policy "with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.")

    c)    <u>Plaintiff's request for production of documents is not barred by California Evidence Code section 1040, et seq.</u>

Defendants object to the production of documents pertaining to defendant officers job applications, psychological testing, background history, complaints of excessive force racism and investigations of those complaints, on the ground that these documents are privileged under California Evidence code section 1040, et seq.

Federal courts have specifically held that the requirements of California Evidence Code 1043 for disclosure of peace officer personnel records and complaints are incompatible with federal law. In *Soto*, this Court stated that the application of section 1043 in a federal question case would severely limit Plaintiff from gaining access to police files in dispute and would improperly shift the burden from the resisting party to justify its privilege claim to the party seeking disclosure to demonstrate good cause for disclosure, in contravention to federal law. 162 F.R.D. at 609 n. 2. See also, *Miller*, 141 F.R.D. at 299.

    d)    <u>The requested documents are discoverable even if Defendants have claimed the federal Official Information Privilege.</u>

*Soto, id* at 613, noted at Footnote 4, citing *Kelley v. City of San Jose* 114 F.R.D. 653, 663 ((N.D.Cal.1987), that after a party properly claims the Official Information Privilege, the Court must balance the following non-exclusive factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) The degree to which government self-evaluation will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the Plaintiff's case.

In civil rights cases against police departments, as in the instant matter against Defendant CITY, the balancing analysis should be "moderately pre-weighted in favor of disclosure." *Kelly, Id.* at 661.

Even before such a balancing test is conducted, the claiming party (iDefendant CITY) must make a "substantial threshold showing" to invoke the Official Information Privilege. *Kelly, Id.* at 669-670. The threshold showing requires a declaration from a responsible official with personal knowledge of matters contained in the declaration, affirming: 1) the agency generated or collected the material at issue and has maintained its confidentiality; 2) a statement that the official has personally reviewed the material in question; 3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to the Plaintiff and Plaintiff's lawyer; 4) a

description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests; 5) a projection of how much harm would be done to the threatened interests if disclosure were made. Further, a strong affidavit would include a description of how Plaintiff could acquire information of equivalent value from other sources without undue economic burden.

As noted in *Soto*, the *Kelley* Court found that the policies underlying civil rights laws, public confidence in the court system, and in doing individual justice outweighed a police department's desire for secrecy and the privacy rights of officers or citizen complainants. (*Kelly, Id* at 661)

General assertions and claims of harm to the public interest are insufficient to meet the threshold test established by *Kelly* (*Kelly, Id* at 672). Under *Chism v. County of San Bernardino* 159 F.R.D. 531 (C.D.Cal.1994), the party resisting discovery ( Defendant CITY) must specifically describe how disclosure of the requested documents in the particular case would be harmful. *Chism, Id* at 535.

In the instant case, Defendant CITY submitted the Declaration of Lt. Michael Stasko in response to Plaintiff's discovery requests. Lt. Stasko states that he is the Commanding Officer of the Legal Division of the San Francisco Police Department. Although cloaked in specific language, Lt. Stasko's Declaration fails to identify specific harm that would result from disclosure of the specific records requested by Plaintiff under a well-crafted protective order.

For example, Lt. Stasko asserts in paragraph 6 of his declaration that a court order to disclose all or significant portions of an officer's personnel file would have severe consequences for the San Francisco Police Department, such as "affected officers would feel that their legal rights to personal privacy and dignity has been compromised. Disclosure would cause officers who are not defendants in this case to feel insecure about their safety and privacy and, as a result, the morale of the San

1  Francisco Police Department would suffer.  Any decline in morale adversely affects the San
2  Francisco Police Department in that its ability to attract and retain the most qualified individuals."
3  Assuming that Lt. Stasko intended to included the following two words to the last sentence, "would
4  suffer," paragraph 6 is pure speculation unsupported by any facts, studies, analysis, or logical
5  reasoning as to how disclosure in *this particular case* would cause harm if such records were
6  disclosed under a well-crafted protective order.
7        In fact, Lt. Stasko's declaration fits the model of the declaration rejected by the *Soto* court in
8  its discussion at *Id* 613.  Essentially, Lt. Stasko declares that Defendant CITY should be shielded
9  from responding to Plaintiff's legitimate and relevant discovery requests because he asserts that
10 disclosure under a protective order would cause a general malaise upon the San Francisco Police
11 Department.
12       Finally, Lt. Stasko asserts in paragraph 8 of his declaration that the need for confidentiality is
13 even greater for administrative investigations due to the fear that public disclosure of the inner
14 workings (or "internal investigations", as Lt.Stasko calls them) of the San Francisco Police
15 Department would inhibit the department from effectively policing itself.  This assertion, once again
16 totally general in nature, fails to address the instant matter with any specificity and is illogical.
17       Plaintiff's counsel asserts, in response, that the total lack of transparency, as requested by Lt.
18 Stasko, facilitates the type and nature of danger that Plaintiff, and at least two other innocent victims,
19 suffered at the hands of Defendant Officer SERNA, among others.  This is the fundamental holding of
20 *Kelley, Soto, Mille, and Chism*.  If there is no disclosure whatsoever to be had of relevant records in
21 the possession of Defendant CITY, even in a court of superior jurisdiction (Federal District court) in
22 an action that alleges U.S. Constitutional violations not only by police officers, but by the very
23 Defendant CITY that employs the officers, it is less likely that any officer will be held accountable to

U.S. Constitutional requirements. An opaque system, which appears to be what is recommended by Lt. Stasko, allows the police department to avoid policing itself, and to avoid accountability, leading to the unchecked pattern of misconduct by Defendant Officer SERNA as alleged by Plaintiff.

Essentially, Lt. Stasko's declaration amounts to a claim of: "Trust us. If you don't, and you check on what we are doing, harm will follow to the department." Unfortunately, harm by a Department officer has followed to Plaintiff, and it appears that at least that particular officer has established an unchecked pattern of similar misconduct.

Even if Lt. Stasko's declaration is sufficient to meet the threshold showing established by *Kelley*, the Official Information Privilege balancing militates strongly in favor of disclosure of the requested records. Particularly given Lt. Stasko's declaration and the legal protections afforded California police officers' personnel records, Plaintiff obviously has no other avenue of obtaining the requested discovery. The balance in a civil rights action against a police department begins moderately pre-weighted in favor of disclosure to Plaintiff. Far from having a chilling effect, disclosure would encourage municipalities to better supervise and control their employee police officers in the face of oversight through court action by individuals, like Plaintiff, aggrieved by U.S. Constitutional violations committed by police officers.

### III. CONCLUSION

The documents requested by Plaintiff are intended to lead to the discovery of admissible evidence, pertinent both to the subject-incident of Plaintiff's Complaint and Plaintiff's *Monell* claim. This Court should order defendants to produce each and every document responsive to Plaintiff's Request for Production of Documents and Things to Defendant CITY AND COUNTY OF SAN FRANCISCO (Set One), Nos. 11 and 12.

| | |
|---|---|
| Dated: February 20, 2008 | **The Law Offices of John L. Burris** |
| | *[signature]* |
| | Ben Nisenbaum |
| | Attorney for Plaintiff |