JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200    Facsimile: (510) 839-3882
Email: john.burris@johnburrislaw.com
       bnisenbaum@gmail.com

Attorneys for Plaintiff
GREGORY OLIVER II

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY OLIVER II,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; HEATHER FONG, in her capacity as Chief of Police for the CITY AND COUNTY OF SAN FRANCISCO; JESSE SERNA, individually, and in his capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; and, San Francisco police officers DOES 1-25, inclusive,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　　　／ | Case No.  C 07 02460 JL<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANT CITY**<br><br>**Time: 9:30 a.m.**<br>**Date: April 2, 2008**<br>**Courtroom: F**<br><br>Honorable Magistrate Judge James Larson |

**INTRODUCTION**

In this case, which alleges a strong *Monell* cause of action that Defendant Officer SERNA has effectively been allowed by Defendant CITY to engage in a clear pattern of repeated Constitutional violations, including committing excessive force and making false arrests of people, including Plaintiff GREGORY OLIVER, II, Plaintiff seeks evidence in the possession of Defendant CITY that is clearly directed at illuminating the process by which Defendant CITY has allowed Defendant

Officer SERNA to continue his alleged pattern of abuse, without any apparent measures taken to protect members of the public from Defendant Officer SERNA.

Plaintiff's requests, which are reasonably limited, are clearly directed at learning whether and how Defendant CITY has ratified or condoned Defendant Officer SERNA's alleged pattern of misconduct. Such evidence as requested by Plaintiff forms the basis of proving Monell liability against the CITY AND COUNTY OF SAN FRANCISCO. Defendants' extraordinarily limited offer provides no insight or evidence of Defendant CITY's procedures with respect to disciplining, training, or removing an abusive police officer. The Court should conduct the appropriate balancing test, which in this section 1983 action for violation of Plaintiff's Fourth and Fourteenth Amendment Rights to Plaintiff's discovery requests, pursuant to a carefully crafted protective order, should result in disclosure of Plaintiff's reasonably limited requests.

## LEGAL ARGUMENT

a) <u>Defendants' reliance on federal privileges, including the Official Information Privilege and the right to privacy is not grounds to deny discovery of the requested information.</u>

Even if Defendants properly claimed the Official Information Privilege, Defendants do not address the relevant points of the balancing test articulated in *Kelley v. City of San Jose* 114 F.R.D. 653, 663 (N.D.Cal.1987). As previously discussed, in the *Kelley* balancing test to determine whether the Official Information Privilege applies in a section 1983 civil rights violation case against police departments, the analysis begins *moderately pre-weighted in favor of disclosure*. The rationale for this position is clear: Public confidence in the court system, and in doing individual justice outweighs police departments' desire for secrecy and the privacy rights of the individual officers and the citizen complainants. *Kelly, Id.* at 661 (emphasis added).

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANT CITY
Case No. C 07 02460 JL

2

Defendants' reliance on *Frankenhauser v. Rizzo* 59 F.R.D. 339 (E.D. Pa. 1973), and its ilk is deeply misplaced. *Kelley*, and its progeny, not *Frankenhauser*, provide the law of this jurisdiction.

The overriding question in Plaintiff's *Monell* claim in the instant case is whether the San Francisco Police Department has been doing what it is supposed to do in terms of preventing its police officer employees from misusing the authority given to them by the police department and the laws of the State of California, when an officer such as Defendant Officer SERNA, is initially hired as a police officer; and then afterward, when an officer such as Defendant Officer SERNA, is the subject of citizen complaints alleging violations of Constitutional rights, such as excessive force and false arrest.

Defendants argue for a total shield against discovery of how their internal investigations are conducted in practice: Defendants will provide no more than the lists witnesses and the complaint(s) itself. Defendants will not provide any evidence of what internal investigators did with this information. Such secrecy befits a police state far more than it does the United States of America. In *Kelley*, Magistrate Judge Brazil specifically declined to follow *Frankenhauser* by adopting the weighted balancing test described above. To this end, Magistrate Judge Brazil determined (*Kelley, Id* at 661):

> "Comparing the relative importance of the interests in the competing categories, most courts have concluded (and I agree) that it would be wholly inappropriate to create an 'absolute' privilege for confidential information in police files. Instead, the courts have granted such information only a 'qualified' privilege, meaning that in some circumstances it might be discoverable. *See, e.g., Denver Policemen's Protective Association v. Lichtenstein, supra, 660 F.2d at 437.*
>
> Unfortunately, there is considerable inconsistency in the analytical process courts have used to decide when to uphold and when to penetrate assertions of privilege in this environment. Some courts have used an 'open' balancing, meaning that they compare the weight of the specific interests that are competing in particular situations and that when they put those interests on the judicial scales neither side starts with an advantage. *See, e.g., Frankenhauser v. Rizzo, 59 F.R.D. 339.* Other courts, by contrast, have adopted a 'weighted' balancing approach, meaning that before they begin the

process of ascribing weight to the specific competing interests in a given case they add weight to one side of the scale. See, e.g., *Wood v. Breier, supra,* 54 F.R.D. at 13……"

Magistrate Judge Brazil provided some bases for his opinion in *Kelley, Id*, (at 661-662):

"In my view there are several considerations that justify adopting in these kinds of civil rights cases a *balancing approach that is moderately pre-weighted in favor of disclosure.* As a general proposition, the public interests in the categories favoring disclosure (the policies underlying our civil rights laws, public confidence in the court system, and doing justice in individual cases) clearly outweigh the public interests in favor of secrecy (e.g., not compromising procedures for self-discipline within police forces, or the privacy rights of officers or citizen complainants). As I suggest below, there has been substantial exaggeration of the size of the harm that disclosure might do to concededly legitimate law enforcement interests. And in the relatively rare case where there is a very real threat to obviously important law enforcement interests (as there could be, for example, if a plaintiff were seeking the names of confidential informants in on-going criminal investigations, or wanted to learn operational plans for imminent police activities), the moderate pre-weighting in favor of disclosure will not disable courts from protecting those law enforcement interests.

There are additional considerations that support the conclusion that it is appropriate to adopt a balancing test that is moderately pre-weighted in favor of disclosure. Such pre-weighting is consistent with the well-established notion that because privileges operate in derogation of the truth finding process the places the burden of proving all the elements essential to invoking any privilege on the party seeking its benefits. The pre-weighting also is consistent with the related idea that privileges generally are to be narrowly construed, and that doubts about their applicability are to be resolved in favor of disclosure…." (emphasis in original).

With respect to the balancing test to be applied, *Kelley* is on point, and in this case overrides Defendants assertions of privilege. Turning to the non-exclusive factors to be weighed, Defendants contend that "The most relevant factor concerning the privilege as applied to the OCC complaints from an officer's perspective is the effect the release would have on the San Francisco Police Department's ability to effectively investigate its officers. This ability would be severely curtailed, if not completely destroyed, if these materials were disclosed." (citing the Stasko declaration at paragraph 18).

Plaintiff respectfully disagrees. It is an open question as to whether complaints to OCC (or MCD investigations, for that matter) concerning Defendant Officer SERNA have been properly

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANT CITY
Case No. C 07 02460 JL

4

investigated at all.  Defendants make no specific showing of how disclosure would severely curtail, or even destroy, the San Francisco Police Department's ability to investigate its own officers.  Disclosure does not prevent the OCC from functioning or investigating.  There is likewise no reason to believe that the internal affairs branch of the San Francisco Police Department (which Plaintiff's counsel has learned is called the "Management Control Division" or "MCD") would stop functioning if disclosure of the requested information were ordered pursuant to a protective order.  It is not clear on what basis Lt. Stasko has arrived at his conclusions, which are exactly the sort of exaggeration that Magistrate Judge Brazil found insufficient.

It may be that Defendants' claim is that internal investigators would be loathe to find evidence of guilt by an officer if they knew disclosure could be ordered, allegedly chilling the self evaluative purpose of investigations.  But such a claim flies in the face of Plaintiff's allegations, which are that Defendant CITY has ratified Defendant Officer SERNA's misconduct, and, even prior to disclosure, has misused the self-evaluative process to shield SERNA from potential liability, thereby leaving SERNA on the street, to continue to abuse people, including Plaintiff.  Indeed, Plaintiff's contention is that IF Defendant CITY had made proper investigations of Defendant SERNA, and taken appropriate action, including from the time of SERNA's hiring up to the subject-incident of Plaintiff's Complaint, then Plaintiff would not have wrongfully suffered harm by SERNA's misconduct.  Given the misconduct alleged in Plaintiff's case and the two other cases mentioned in Plaintiff's motion (*Maestrini* and *Hwang*), Defendant CITY's role in allowing SERNA to continue his abusive pattern must be investigated.  It can only be effectively investigated by piercing the shield in which Defendant CITY has enveloped its internal investigations.

Defendants have made no showing of any harm in the manner of specificity demanded by *Kelley*.  Instead, Lt. Stasko merely asserts several different bases upon which the department may generally

be affected by disclosure. There is no claim that, for example, disclosure in this case would cause a specific confidential informant to be identified, who could then suffer harm, or that an ongoing criminal investigation would be jeopardized. There has been no showing by Defendants that anything particular to this case, in which Plaintiff GREGORY OLIVER suffered violations committed by Defendant Officer SERNA, would override Plaintiff's need to obtain evidence of how the San Francisco Police Department, in practice, conducts, or fails to conduct, its internal investigations regarding Defendant Officer SERNA.

Finally, Defendants offer no real authority to override the Federal law that controls this case. Defendants claim a right of privacy in their personnel files, based on California Evidence Code section 1045, and a California state-law case. Where this is inconsistency between state and Federal law, *Soto v. City of Concord* 162 F.R.D. 603 (N.D. Cal. 1995) and *Miller v. Pancucci* 141 F.R.D. 292 (C.D. Cal. 1992) are clear that an officer's expectation of privacy in his personnel file must yield to discovery in a section 1983 action in the Federal venue, alleging constitutional violations, following an *in camera* review. With respect to Defendants' position regarding Defendant Officers' psychological records, such records are clearly discoverable under *Soto*:

> "Defendants contend that the requests are not relevant and are overbroad as to time and subject matter. The *Miller* court found psychological evaluations relevant to plaintiff's *Monell* claims against a city police department. 141 F.R.D. at 296. Such records may also be relevant to claims against the individual officer-defendants, as such defendants may assert certain immunities which require an evaluation of the officers' subjective state of mind. "Relevant psychological testing results pertaining to the incident at issue or relating to prior violent episode" are discoverable. *Mueller v. Walker,* 124 F.R.D. 654, 659 (D.Or.1898). This Court similarly finds that records of mental or psychological conditions are relevant to Plaintiff's excessive force claim against Defendants. However, this Court finds that the requests in their present form are overbroad. This Court finds that only those mental or psychological records which concern the incident at issue, prior episodes of violence, or the officers' propensity for violence of the type alleged in the complaint are relevant." (*Soto, Id* at 618).

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANT CITY
Case No. C 07 02460 JL

6

With respect to medical records, Judge James in *Soto* (*Id* at 618-619) determined that an *in camera* review would be appropriate, using the test articulated in *Pagano v. Oroville Hosp.,* 145 F.R.D. 683 (E.D.Cal. 1991):

> The court in *Pagano* invoked a five-part test to determine the scope of the privacy interests asserted in response to a discovery request for medical records. The court engaged in a "conscious balancing of the many interests at stake" and considered the following factors: "(1) the probable encroachment of the individual's privacy right ... and the magnitude of the encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment." *Soto, Id* at 698-99.

To the extent that Defendant CITY possesses relevant medical records pertaining to Defendant Officer SERNA, such as drug testing or other medical records that might indicate whether Defendant Officer SERNA has used steroids or other drugs that would explain his explosive behavior with respect to Plaintiff OLIVER (as well as others, including Marco Maestrini and Esther Hwang), and would have put Defendant CITY on notice of such a danger, the Court should order such records disclosed.

**CONCLUSION**

Plaintiff's discovery requests seek information reasonably calculated to lead to the discovery of admissible evidence. Defendants have not overcome the presumption in favor of disclosure under a protective order, as established by the controlling authority in this Court's jurisdiction.

Respectfully submitted,

Dated:  March 26, 2008   **The Law Offices of John L. Burris**

/s/ Benjamin Nisenbaum
Benjamin Nisenbaum
Attorney for Plaintiff

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANT CITY
Case No. C 07 02460 JL

7