JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200 Facsimile: (510) 839-3882
Email: john.burris@johnburrislaw.com
bnisenbaum@gmail.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY OLIVER, II,

Plaintiff,

vs.

CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; HEATHER FONG, in her capacity as Chief of Police for the CITY AND COUNTY OF SAN FRANCISCO; JESSE SERNA, individually, and in his capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; and, San Francisco police officers DOES 1-25, inclusive,

Defendants.
/

Case No. C 07 02460 JL

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE CLAIMS AGAINST CITY AND COUNTY OF SAN FRANCISCO AND CHIEF HEATHER FONG FROM CLAIMS AGAINST OFFICER SERNA**

**PLAINTIFF'S OPPOSITION TO STAY *MONELL* AND RELATED DISCOVERY**

**Time: 9:30 a.m.**
**Date: May 21, 2008**
**Courtroom: F**

Honorable Magistrate Judge James Larson

## INTRODUCTION

Following the hearing on Plaintiff's Motion to Compel Production of Documents by Defendant CITY in the instant-matter, at which Defendants were ordered to disclose documents to the Court for *In Camera* review. Defendants subsequently filed the instant motion, moving to bifurcate claims and stay *Monell* and related discovery until after a trial is conducted on Plaintiff's claims against Defendant SERNA. Presumably, under Defendants' proposal, if Plaintiff prevails against SERNA, discovery would resume, the same jury would be reconvened months later, or a new

jury, unfamiliar with the underlying facts of the case would be impaneled, and a second trail would occur. For the reasons set forth herein, Plaintiff opposes Defendants' motion.

## I. SUMMARY OF THE FACTS

1. Plaintiff GREGORY OLIVER, II, a 35 year-old African American male with no criminal history at the time of the subject-incident on August 20, 2006, suffered injuries and false arrest and imprisonment after Defendant Officer JESSE SERNA used excessive force against him near the Impala Club in the Northbeach district of San Francisco. All parties agree that Plaintiff was not more than slightly intoxicated at the time of the incident, about 1:45 a.m.

2. Plaintiff, a personal trainer for Barry Bonds among other professional athletes, was at the Impala Club, a nightclub, with several female acquaintances on the night of August 19, 2006. Plaintiff hailed a taxi, which only had room for Plaintiff's acquaintances. Plaintiff's acquaintances left in the taxi, while Plaintiff waited behind, near the intersection of Broadway and Kearney Street, for another taxi to arrive. No taxis came, and Plaintiff walked down Broadway to a location where he expected he would have more success in hailing a taxi. As Plaintiff walked down Broadway, he noticed an altercation involving three Latino males attacking a fourth Latino male. Plaintiff passed by the altercation, and one of the Latino men ran past Plaintiff. Plaintiff observed a San Francisco Police Officer tackle the Latino man who ran past him, and then saw the apparent victim of three Latino males on the ground near him while a San Francisco Police Department officer used force against him. To that end, San Francisco Police Department Officer Yep #95 wrote in his police report that he "shoved the male with my right foot to keep him on the ground. My right foot contacted his side/hip." (referring to the Hispanic male). Plaintiff did not approach or interfere with the officers.

3. Defendant Officer SERNA then appeared at the scene and pushed Plaintiff in the chest with his police baton, and ordered Plaintiff to stand back. Plaintiff stood back as ordered, with his hands held up to show that he was no threat, and told Defendant Officer SERNA that he seen the altercation involving the Latin men. Plaintiff pointed out that the man on the ground, who a San Francisco Police Department officer was using force against, was actually the victim of an attack by three Latino males.

4. Although Plaintiff posed no threat, and interfered with no police officer, Defendant Officer SERNA then struck Plaintiff across the upper thigh with his police baton and again ordered Plaintiff to stand back. Plaintiff retreated again and told Defendant Officer SERNA that he had not done anything. Defendant Officer SERNA then struck Plaintiff again with his police baton.

5. Plaintiff asked Defendant Officer SERNA for his badge number. Instead of supplying his badge number, Defendant Officer SERNA grabbed Plaintiff by the shirt and neck, breaking Plaintiff's necklace. Defendant Officer SERNA told Plaintiff that he was under arrest.

6. Plaintiff yelled out that he was not resisting, and knelt down. Several other unknown Defendant Officer DOES, possibly including Officer Yep #95, who admitted in his report that he assisted SERNA in arresting Plaintiff, began punching and kneeing Plaintiff.

7. While Plaintiff was on the ground, officers removed his watch and a ring from one his fingers. Subsequently, only Plaintiff's watch was returned to him. Plaintiff was handcuffed, and Defendant Officer SERNA unnecessarily wrenched Plaintiff's left wrist with such force that Plaintiff screamed. Plaintiff had previously suffered a compound fracture to the left wrist. In response to Plaintiff's scream, Defendant Officer SERNA told Plaintiff to "shut the fuck up."

8. Defendant Officer SERNA walked Plaintiff to an unknown Defendant Officer DOE, possibly Officer Yep, and let go of Plaintiff's wrist. Plaintiff then was able to tell Defendant Officer SERNA of the injury to his left arm. Plaintiff also told Defendant Officer SERNA that he was causing Plaintiff unnecessary pain. The Defendant Officer DOE asked Plaintiff what he had been doing. When Plaintiff told him that he was trying to catch a cab, the officer told him "look around… you don't belong here." The officer asked where Plaintiff was coming from and how old he was. Defendant Officer SERNA then once again painfully wrenched Plaintiff's left wrist and put Plaintiff in a police vehicle.

9. Plaintiff was transported to jail after being falsely arrested on fabricated charges that he resisted, obstructed, or delayed a peace officer in the performance of their duties. No charges were filed against Plaintiff.

10. Defendant Officer SERNA contended in his report of the incident that Plaintiff "aggressively approached myself and other officers" as officers were taking struggling suspects into

custody and SERNA "began to order the crowd back onto the sidewalk." SERNA contends in his report that he pushed Plaintiff and told him to get back on the sidewalk. SERNA contends in his report that Plaintiff then approached him again "in the same manor (sic)", so he struck Plaintiff once in the upper left thigh before he and Officer Yep took Plaintiff to the ground with a leg sweep.

11. In at least two pending civil actions, also filed in Northern District Federal Court, Defendant Officer SERNA is a named Defendant. In *Maestrini v. City and County of San Francisco, et al.* case no. C 07 2941 PJH, Marco Maestrini, the Plaintiff in that action, was the victim of alleged excessive force and false arrest by Defendant Officer SERNA. In his police report pertaining to the arrest Mr. Maestrini, Defendant Officer SERNA stated: "I asked Maestrini and Brock to back away and get back on the sidewalk however they refused…." However, Plaintiff Maestrini contended in his First Amended Complaint in case no. C 07 2941 PJH, that on October 29, 2006, on Broadway in Northbeach at about 1:30 a.m., he and a friend observed San Francisco Police Department officers beating a person with excessive force. When Mr. Maestrini and his friend approached the officers to ask what was going on, Defendant Officer SERNA grabbed Mr. Maestrini and slammed him against a parked paddy-wagon several times, repeatedly yelling at Mr. Maestrini to "shut up!" When Mr. Maestrini verbalized a request for Defendant Officer SERNA's badge number, SERNA slammed Mr. Maestrini's head against the paddy-wagon. Mr. Maestrini suffered a laceration to the crown of his head when SERNA slammed it against the paddy-wagon. SERNA contended in his report that Mr. fell onto the pavement after SERNA purportedly grabbed him by the front of his shirt. It is unclear in SERNA's report how such a fall would cause a laceration to the crown of Mr. Maestrini's head. Mr. Just like Plaintiff OLIVER, Mr. Maestrini denied any wrongdoing in his civil Complaint and alleged that Defendant SERNA fabricated a basis to justify his use of excessive force and false arrest.

12. In *Hwang v. City and County of San Francisco, et al.* case no. C 07 2718 MMC, Esther Hwang was falsely arrested by Defendant Officer SERNA and San Francisco Police Department Officer Nelson Artiga on May 12, 2007 after they used excessive force against her. Officer Artiga prepared the primary police report in that case, which claimed that Defendant Officer SERNA took Ms. Hwang to the ground through use of a hair pull takedown after she was detained while allegedly attempting to jaywalk across Broadway at about 11:15 p.m., and allegedly stomping

twice on Officer Artiga's right foot. Although Officer Artiga stated that he felt pain in his right toe, and Ms. Hwang's shoes were seized as evidence, there is no indication of any visual documentation of injury to Officer Artiga. Just like Plaintiff OLIVER and Mr. Maestrini, Ms. Hwang denied any wrongdoing in her civil complaint, and contended that Defendant SERNA fabricated the basis for his use of force and arrest of Ms. Hwang. Notably, each of these incidents expressly involve at least one identical specific factual allegation upon which the use of force by Defendant SERNA was predicated: That Plaintiff OLIVER and Mr. Maestrini allegedly were in the street and disobeyed orders to get back on the sidewalk, and that Ms. Hwang allegedly threatened to jaywalk (i.e., to go off the sidewalk).

13. Plaintiff OLIVER contends that defendant SERNA, among other officers, used excessive force against him in violation of his federal civil rights, and also contends a broader pattern of allowing such violations by its officers to be ratified and/or condoned by defendant CITY AND COUNTY OF SAN FRANCISCO, which caused Plaintiff OLIVER to suffer the violations alleged. The discovery sought by plaintiff and denied by defendants is directly germane to plaintiff's contentions that defendant officers violated his civil rights, and that the CITY OF VALLEJO effectively ratified that violation through a policy of allowing such violations by its officers to go unchecked. Plaintiff will agree to a stipulated protective order regarding the requested discovery in the defendant officers' personnel records.

## II. <u>ARGUMENT</u>

### A. BIFURCATION IN DISCOVERY IS UNNECESSARY AND MAY DENY PLAINTIFF RELEVANT DISCOVERY ADMISSABLE IN THE INITIAL LIABILITY PHASE OF TRIAL AGAINST DEFENDANT OFFICER SERNA

Defendants claim several factors upon which *Monell* discovery should be bifurcated, primarily relying upon authority allowing bifurcation of the *Monell* claims **at trial.** (E.g. *Saxion v. Time-C-Manufacturing Inc.*86 F.3d 553, 556 (6th Cir. 1996); *Quintanilla v. City of Downey* 84 F.3d 353, 356 (9th Cir. 1996).

In *Washburn v. Fagan*, No. C03-0869 MJJ, C03-1194 MJJ, 2006 WL 1072057, at *7 n. 11, Judge Jenkins only noted: “Plaintiff Washburn also has renewed his request to avoid bifurcating Plaintiff's *Monell* claims from his individual liability claims. In light of this order dismissing Plaintiff's *Monell* claims, the Court DENIES Plaintiff's request as moot. The Court also DENIES Plaintiffs' request to reconsider the Court's previous grant of summary judgment as to Plaintiffs' false arrest claims. Plaintiffs have not demonstrated new law or facts to justify such reconsideration.”

*Washburn* did not bifurcate *Monell* claims, it dismissed them. None of the cases cited by Defendants required bifurcating *Monell discovery*.

*Boyd v. City and County of San Francisco,* No. C04-5459 MMC, 2006 L 68056 (N.D. Cal. Mar 14, 2006), which was not reported in F. Supp 2d., bifurcated *Monell* discovery. That case involved the shooting death of a man by police officers alleged to be in possession of a firearm.

In the instant matter, Plaintiff has alleged a repeated pattern of excessive force and false arrest by Defendant Officer SERNA. At least two other pending lawsuits, previously brought to the Court’s attention by Plaintiff’s counsel (*Maestrini v. City and County of San Francisco, Defendant Officer SERNA,* and *Hwang v. City and County of San Francisco, Defendant Officer SERNA, and Defendant Officer ARTIGA)* in which those plaintiffs are also represented by counsel in the instant matter, involve Defendant Officer SERNA in a leading or exclusive role, all occurring at night in the Northbeach nightclub district of San Francisco, with similar alleged justifications for SERNA’s use of force. Plaintiffs in each of the three cases of counsel involving Defendant SERNA have sought the same or similar *Monell*-type discovery, with an eye toward potentially filing a motion to consolidate all three cases for trial. Whether this motion is appropriate cannot be measured without conducting *Monell* discovery.

Discovery pertaining to other incidents involving Defendant Officer SERNA, which Defendants' counsel may consider "*Monell*" discovery, is also relevant to individual claims of Plaintiff OLIVER.

For example, Federal Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…" Other acts may also be admissible against Defendant Officer SERNA if they meet the standard of a *modus operandi* by Defendant Officer SERNA.

Plaintiffs have also sought records from Defendant CITY that may be relevant to the use of drugs by Defendant Officer SERNA. In particular, evidence of steroid use by Defendant Officer SERNA may be characterized by Defendants as *Monell* evidence, when in fact it may be admissible in Plaintiff's individual liability case. Defendants draw a distinction between OCC files and non-OCC materials. The basis of this distinction, other than title, is unclear. Based on Plaintiff's experience, the Management and Control Division ("MCD") is essentially the San Francisco Police Department's Internal Affairs Division. It appears that Defendants draw black marker around the MCD, and non-OCC files, for the Department's internal use, while OCC is simply the Office of Citizen Complaints. If there are adverse drug test results, or communications with SERNA that may contain admissions by SERNA, MCD is likely where those records exist, kept opaque from discovery.

The internal deliberations of Defendant CITY which have been sought by Plaintiff may also be discoverable in the individual liability phase of the trial. For example, records of internal deliberations may reflect conversations with and admissions by Defendant SERNA that may be

admissible. Defendants claim that they are unable to identify anyone who was transported to jail in the same vehicle as Plaintiff, who was transported in a "paddy wagon" with other people. At least two of those people told Plaintiff that they were arrested after they objected to the mistreatment of Plaintiff. Records of internal deliberations may expose the truth of the claim that Defendant CITY is unable to identify those who were transported with Plaintiff to jail.

Records of internal deliberations of Defendant CITY may also reflect interference with evidence in this matter, which may also reflect a *modus operandi* on the part of the CITY

Bifurcating the *Monell* claims during discovery will substantially impair Plaintiff's discovery in this case, along with any potential motion to consolidate *Maestrini* and *Hwang* with the instant action.

### B. JUDICIAL ECONOMY IS BETTER SERVED BY ALLOWING *MONELL* DISCOVERY TO CONTINUE IN THIS ACTION

Whether the *Monell* phase of this action should be bifurcated at trial is premature. This should be decided before trial, after the *Monell* discovery has been conducted. Without knowing what the discovery will show, Plaintiff's *Monell* claims cannot be assessed. However, provided Plaintiff prevails in his individual liability claims against Defendant SERNA, bifurcation of *Monell* discovery will have shown itself to be totally inefficient. The trial would have to be suspended for a period of months while the parties conducted *Monell* discovery, and then reconvened with either the same jurors (imposing a substantial burden), or a new group of jurors who did not have the benefit of hearing the individual liability phase of the trial, requiring further jury selection. Bifurcation would only increase the length of litigation and likelihood for jury turnover in the *Monell* phase.

## III. CONCLUSION

Defendants' Motion to Bifurcate should be denied. The parties are already in the process of conducting *Monell*-type discovery, and should be allowed to continue. Defendants' abrupt motion to bifurcate can only impair Plaintiff's ability to discovery evidence that may well be admissible in the individual liability phase, even where it overlaps with *Monell*-type discovery. This is especially true given the number of pending lawsuit against Defendant SERNA alleging excessive force.

Dated: April 29, 2008

**The Law Offices of John L. Burris**

/s/ Benjamin Nisenbaum
Benjamin Nisenbaum
Attorney for Plaintiff