1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Attorney
3  SEAN F. CONNOLLY, State Bar # 152235
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:     (415) 554-3863
6  Facsimile:     (415) 554-3837
   E-Mail:        sean.connolly@sfgov.org
7
   Attorneys for Defendants,
8  CITY AND COUNTY OF SAN FRANCISCO ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY OLIVER, II,<br><br>                Plaintiff,<br><br>     vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; HEATHER FONG, in her capacity as Chief of Police for the CITY AND COUNTY OF SAN FRANCISCO; JESSE SERNA, individually, and in his capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; and San Francisco police officers DOES 1-25, inclusive,<br><br>                Defendants. | Case No. C07-02460 JL<br><br>**DEFENDANTS' (CCSF, FONG, SERNA, AND MORIYAMA) OPPOSITION TO PLAINTIFFS' MOTION TO RELATE (FILED IN *OLIVER v. CCSF, ET AL.*, USDC, ND CASE NO. C07-2460)** |
| SHAWN MYERS and SARAH MYERS,<br><br>                Plaintiffs,<br><br>     vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, HEATHER FONG, JESSE SERNA, individually, and in his capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; GARY MORIYAMA, individually and in his capacity as a police officer<br><br>                Defendants. | Case No. C08-01163 MEJ |

Opposition to Relate
CASE NO. C08-01163 EMC

n:\lit\li2008\080047\00492658.doc

**INTRODUCTION**

Nearly all §1983 cases involving a police officer necessarily involve an allegation of false arrest, excessive force, and a "*Monell*" claim.  These three categories of claims are alleged in virtually every lawsuit instituted against a police officer.  While the nature of the legal claims against any police officer may be identical from lawsuit-to-lawsuit, the similarity ends there.  The claims alone do not make a series of cases related.  Rarely are the facts underlying these claims the same.  Every interaction between a police officer and a citizen resulting in a lawsuit involves a different set of circumstances:  The actions of a plaintiff precipitating police interaction are generally unique; the verbal interaction between the plaintiff and a police officer are generally unique; the circumstances leading to a plaintiff's arrest are generally unique; the circumstances warranting the use of force are generally unique; and the degree of force employed, if any, is usually unique from case to case.

Plaintiffs here confuse the allegations with facts.  While the allegations against any police officer may be substantially the same from case to case, the same cannot be said about the facts and circumstances underlying those allegations.  And such is the case here.  The facts and circumstances underlying the different lawsuits cited to by Myers are so different and varying from one another that they are virtually unrecognizable when placed side-by-side on their facts alone.

Here, as with other unwitting police officers vilified by the *Chronicle* in the past, plaintiffs seek to exploit notoriety and gain unfair advantage by relating cases simply because they all involve to some degree or another the same police officer.[1]  Having previously denied this same motion, this gamesmanship should not be countenanced by this Court.

//

---

[1] This would not be the first time the plaintiff's bar has stacked cases against an individual officer in the wake of a sensationalized and distorted article by the *Chronicle*.

# FACTUAL BACKGROUND OF *MYERS V. CCSF*

On February 24, 2007, near the intersection of 5th and Mission Streets in San Francisco Jamal Jackson brutally beat the driver of another car in a road rage incident and then fled the scene. The victim was left with severe injuries to his head and face. Jackson ditched his car, a white Nissan Sentra, near the Ferry Building and disappeared. A good Samaritan followed Jackson to the Ferry Building where she saw San Francisco police officers Serna and Moriyama on patrol. She informed the officers of her observations and pointed to Jackson's car. Serna and Moriyama went to investigate.

As officers inspected the car, they were approached by plaintiff, Shawn Myers, who falsely informed them that he had seen the driver exit the white car and run into a nearby parking lot. Officers Serna and Moriyama ran to the parking lot to search for Jackson. Plaintiff Myers had deliberately misinformed and mislead the officers. As the officers attempted to search the parking lot Jackson reappeared from an entirely different direction totally inaccessible to the parking lot. The officers attempted to contact Jackson and an accomplice who admitted to owning the car. When the officers tried to arrest them Jackson resisted, which required Officer Serna to use reasonable force to effect his arrest.

As the officers were attempting to arrest Jackson and his accomplice, plaintiff Myers approached and began interfering with the arrest by verbally challenging the officers and telling the officers that he "had something for them." When asked by the officers to back away from the arrest, Myers refused and then challenged the officers saying, "fuck you… shoot me mother fucker…" while at the same time reaching into his jacket pocket feigning as though he had a weapon. The officers told Myers to take his hands out of his pockets, but Myers refused.

Because Myers was interfering in the arrest, threatening the officers, and because they feared that Myers might be armed or dangerous, the officers turned their attention toward Myers and attempted to arrest him. When the officers approached Myers he began to struggle. At 6'1" and 210 lbs, the officers had a difficult time restraining Myers. During the struggle with Myers, the suspect Jackson fled despite being handcuffed. Myers had succeeded in creating the opportunity that caused

Jackson to escape.  Myers struggled fiercely which caused minor injuries to Officer Moriyama including injuries sustained when Myers bit Moriyama on the hand.

As the officers tried to arrest Myers, despite being without their handcuffs, Sarah Myers appeared from nowhere and charged the officers as if she were going to attempt to free Myers or otherwise interfere.  Because the officers were still struggling with the combative Myers, and because they were without handcuffs, or back-up, and were vulnerable to assault, and had no way to stop Sarah Myers from assaulting them or interfering, she was pepper sprayed.

Eventually, back up units arrived and Shawn and Sarah Myers were arrested.  The officers used a reasonable and necessary amount of force to effect the arrest of both Myers.  Jackson was apprehended a short time later hiding in Justin Herman plaza.  The officers deny the allegations in the complaint and deny the use of derogatory language included in plaintiff's complaint.

## I. THIS COURT HAS PREVIOUSLY RULED THAT THE SAME GROUP OF CASES WERE NOT RELATED

On August 14, 2007, this Court correctly ruled that the same group of cases was not related (Doc. No. 16, *Oliver v. CCSF, et al.*, Case No. C07-2560).  Plaintiffs' attempt to relate the cases is in bad faith as they were on notice of that this Court had previously denied the relation, yet they persist in seeking relation of the present case without indicating why or how the present case warrants relation.

## II. THE CASES CITED BY PLAINTIFF ARE FACTUALLY AND LEGALLY DISTINGUISHABLE FROM ONE ANOTHER

### A. Legal Standard For Related Cases

An action is "related" under Local Civil Rule 3-12(b) if it concerns:

(1) Substantially the same parties, property, transaction, event or question of law; and

(2) When it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges.

Local Civil Rule, 3-12(b).

### 1. The Cases Involve Substantially Different Parties.

The present case is not related because it involves different parties. The plaintiff in each of the cases cited to by Myers is different than Myers. The plaintiffs in the case at bar are not plaintiffs in any other case against any defendant in any other case. Further, the individual defendants in all the other cases are different, with the exception of defendant Serna. As to Serna, his role in each of the cases cited is different. Likewise, the other cases involve other different officer defendants.

### 2. The Cases All Involve Different Facts.

Each of the cases cited by plaintiff as cases that should be related all occurred on different dates spread over Nine months; some occurred in a different year. They all involve a unique set of factual circumstances. The actions by each separate plaintiff precipitating police interaction are different; the verbal interactions between the plaintiffs and the police officers are different; the circumstances leading to each plaintiff's arrest is different; the circumstances warranting the use of force is different; and the degree of force employed, if any, in each case is different.

Each of the plaintiffs in the cases cited to by Myers is of a different race (*Oliver*- African American, *Alemofazzar*- Arab, *Maestrini* -Caucasian, *Hwang*- Asian), undermining any claim by Myers that there was a pattern based on race or nationality.

Contrary to plantiffs assertions that "plaintiffs were bystanders who had committed no crime" (Motion, page 3), plaintiffs Maestrini and Hwang were in fact not bystanders before or during their arrests. They were simply intoxicated people breaking the law in the presence of a police officer. Each refused to comply with a lawful order and then confronted an officer. Plaintiff Hwang concedes that she assaulted an officer. The only similarity of fact appears to be that all plaintiffs had been drinking before acting in such a way that led to their arrests. It is unknown whether the Myers had been drinking before they were arrested, but each did interfere in the arrest of another.

//
//
//

### 3. The Cases All Involve Different Legal Issues Related To False Arrest And Excessive Force.

a. <u>Different Facts for False Arrest Analysis</u>

Each of the cases cited to by plaintiff all involved different facts leading up to the arrest of each plaintiff. Because each of the facts is different for each incident, the legal analysis for probable cause based on the "totality of circumstances" will necessarily vary from case to case.

b. <u>Different Acts of Force to Evaluate Use of Force</u>

Likewise will the evaluation of the reasonableness of the degree of force used in each of the cases vary from case to case. The facts of each are so widely different that evaluation of the use of force will be different. For instance, *Oliver* involved a large very athletic man who refused comply with a lawful order and the subsequent use of a baton by police. *Hwang*, on the other hand, involved a diminutive female who assaulted an officer, but where police used little to no force. In the present case, Sarah *Myers* was pepper sprayed after she attempted to interfere with police, yet officers struggled to contain Shawn *Myers,* all 6'1" and 210 lbs of him, after he challenged two officers while they were in the midst of trying to arrest a dangerous suspect who had just beaten a law abiding citizen to a bloody pulp. Pepper spray, baton, hair pull take down, hand-to-hand wrestling: It is unclear how plaintiffs believe that the facts here are so "substantially" the same as to justify relation.

c. <u>Unclear and Undelineated *Monell* Theory</u>

Lastly, plaintiffs attempt to justify relation through an argument that each case involves a "*Monell*" theory. Other than restating some incomplete basic language found in the *Monell* line of cases, plaintiffs fail woefully to articulate what their Monell argument is. They do not point to facts, theories, arguments, or policies that they believe each of the cases have in common that would justify relation. Nor do plaintiffs elaborate on what the separate Monell theory will be in *Oliver*, *Hwang*, and *Maestrini.*

## III. THERE WILL BE NO DUPLICATION OF EFFORT

Despite the non-specific nature of plaintiffs Myers' *Monell* claim there will be no duplication of discovery because the survival of a *Monell* claim necessarily depends upon the finding of a Constitutional violation in each of the underlying cases. *City of Los Angeles v. Heller*, 475 U.S. 796,

799 (1986).  Thus, each plaintiff will need to conduct specific and unique discovery involving an entirely different set of witnesses and evidence particular to each case, which every other plaintiff will not.

Furthermore, the *Monell* discovery in *Oliver* has been bifurcated, and no *Monell* discovery has been conducted in *Hwang* to date with only two days remaining to complete discovery.  Lastly, *Monell* discovery is neither burdensome or complicated.  It can be conducted on a case-by-case basis without the need to involve a judge to coordinate.

Dated:  June 25, 2008

DENNIS J. HERRERA
City Attorney
JOANNE HOEPER
Chief Trial Deputy

By: s/Sean F. Connolly
SEAN F. CONNOLLY
Deputy City Attorney

Attorneys for Defendants CITY AND COUNTY OF SAN FRANCISCO, et al.